IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENISE WILLIAMS, | : | CIVIL ACTION NO. **3:CV-06-1871** |
| | : | |
| Plaintiff, | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), wherein the Plaintiff, Denise Williams, is seeking review of the decision of the Commissioner of Social Security ("Commissioner")[1] that denied her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act (Act). 42 U.S.C. §§ 401-433, 1381-1383(f).

**I. PROCEDURAL HISTORY.**

Plaintiff protectively filed applications for DIB and SSI on September 26, 2002, alleging disability since May 2, 2002, due to a neck injury, a left shoulder injury, pain in her arms and right hand, fatigue and phlebitis. (R. 32, 100, 311-13). The state agency denied her claim initially. (R. 43-46, 315-18). Plaintiff filed a timely request for a hearing (R. 50) and a hearing was held before an Administrative Law Judge ("ALJ") on August 20, 2004. (R. 324-42). At the hearing, Plaintiff, represented by counsel, testified. (R. 327-41). Plaintiff was denied benefits

---

[1] We have substituted the present Social Security Commissioner, Michael J. Astrue, as the Defendant herein.

pursuant to the ALJ's decision of September 24, 2004.  (R. 36-42).  Plaintiff requested review of the ALJ's decision by the Appeals Council.  On October 18, 2005 the Appeals Council remanded the case to the ALJ for further consideration of Plaintiff's maximum residual functional capacity and for vocational expert testimony, if warranted.  (R. 72-73).

On March 23, 2006, a supplemental ALJ hearing was held.  (R. 343-64).  At the hearing, Plaintiff, represented by counsel, testified and a vocational expert testified.  (R. 343-64). Plaintiff was denied benefits pursuant to the ALJ's decision of April 18, 2006.  (R. 14-25). Plaintiff requested review of the ALJ's decision by the Appeals Council.  (R. 13).  Said request was denied on July 28, 2006 (R. 9-12), thereby making the ALJ's decision the "final decision" of the Commissioner.  42 U.S.C. § 405(g) (1995).  The ALJ's April 18, 2006 decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs. 7 and 8).

## II.  STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

2

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.  ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (1990).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity."  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b) (1995).  The second step involves an evaluation of whether the Plaintiff has a severe impairment.  *See* 20 C.F.R. §§ 404.1520(c),416.920(c).  The Commissioner must then determine whether the Plaintiff's

impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that she is unable to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with her medically determinable impairments, functional limitations, age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

The ALJ proceeded through each step of the sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 19-25). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity at any time relevant to the decision. (R. 19). At step two, the ALJ concluded from the medical evidence that Plaintiff's impairments of bilateral carpal tunnel syndrome, chronic neck pain and diabetes mellitus are severe within the meaning of the Regulations. (R. 20). The ALJ then found that Plaintiff's other alleged disabilities, superficial thrombophlebitis, insomnia, fatigue and fibromyalgia , are not severe within the meaning of the Regulations. (R. 20).

At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the requirements under the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  (R. 20).  The ALJ paid particular attention to Sections 1.02, 1.04 and 9.08 of Appendix I, but found that Plaintiff failed to meet the listing requirements.  (R. 20).

At step four, the ALJ found that Plaintiff is unable to perform any of her past relevant work, which was classified as unskilled work in the light exertional range.  (R. 24).  Accordingly, the ALJ moved on to step five and determined that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work.  (R. 20-24).  The ALJ determined that such work existed in the national economy in significant numbers.  (R. 24-25).

Thus, Plaintiff was found to be not disabled within the meaning of the Act.  (R. 25).  20 C.F.R. § 404.1520(g).

## IV.  BACKGROUND.

### A.  Factual Background

Plaintiff was born on May 1, 1952 and was fifty-three years old at the time of the ALJ's decision, making her a person closely approaching advanced age under the Regulations.  (R. 328, 348).  20 C.F.R. §§ 404.1563(d), 416.963(d).  She has an eleventh grade education and past work experience as a cashier and packager.  (R. 328, 348).

At the ALJ hearings, Plaintiff testified as follows.  Plaintiff injured her neck in 1997 and has treated with a chiropractor since.  (R. 349).  Plaintiff testified that she last worked on May 2, 2001 as a cashier.  (R. 328-29, 348).  Prior to working as a cashier, Plaintiff worked as a parts

inspector, a Humane Society worker and a packager.  (R. 330-32).

Plaintiff stated that she stopped working due to pain in her neck and shoulder.  (R. 333, 349).  She also experiences pain in her arms and hands, is very fatigued and cannot sleep.  (R. 333-34, 349).  Plaintiff has bilateral carpal tunnel syndrome in both hands.  She takes Advil or Tylenol for pain and uses splints when sleeping.  (R. 324, 350, 354).  She reported that the splints help a little.  (R. 324).  She uses a surgical pillow for her neck.  (R. 354).  Plaintiff also takes hot showers and uses a pain lotion.  (R. 335-36, 354).  Due to her hand impairments, Plaintiff drops objects often, cannot open a jar, has difficulty lifting objects and has had to change the way she uses silverware.  (R. 335).  Plaintiff also testified that she has phlebitis in her legs and her ankles swell.  (R. 350).  She takes pain killers and an anti-inflammatory for her legs.  (R. 350).  She experiences back spasms occasionally and cannot turn her head all the way to the left.  (R. 335, 353).

Plaintiff also suffers from diabetes and experiences dizziness, weight gain and weight loss, thirst, fatigue and varying blood sugar levels.  (R. 349-50).  She takes diabetes medication everyday and tests her blood sugar three times a day, though she does not take insulin.  (R. 336, 350).  Plaintiff testified that her blood sugar is generally high, around 230 to 300, but the medication helps bring the levels down.  (R. 336).

Plaintiff is unable to sleep due to discomfort.  (R. 336-37, 341, 350).  Plaintiff gets cramps, numbness in her legs and cramps in her feet If she sits too long and she becomes uneasy if she stands too long.  (R. 337, 350-51).  She testified that she can stand for approximately fifteen to twenty minutes at a time and sit for fifteen minutes.  (R. 351).  She

usually moves around.  Plaintiff testified that she can walk for ten minutes at a time.  (R. 337).  She stated that she can carry small objects, approximately five pounds.  (R. 338, 352).  Her husband usually carries the grocery bags and does most of the shopping.  (R. 338).  Plaintiff does not drive and has never had a driver's license.  (R. 338).

After taking Advil, Plaintiff rated her pain at a seven out of ten.  (R. 351).  She testified that if she takes medication, her pain is about a five out of ten.  (R. 351).

During a typical day, Plaintiff wakes up, takes her medication, cooks, eats, cleans the house and makes the bed.  (R. 338-39, 352).  She does not shower until her husband gets home because she fears she may fall.  She also does no heavy lifting unless her husband helps.  (R. 338).  Plaintiff reads, watches television, listens to the radio and visits with her friends.  (R. 339, 352).  Plaintiff elevates her legs for at least two hours to help with circulation.  (R. 352).  She no longer does many of her hobbies because of cramps in her hands, fatigue and poor concentration.  (R. 339-40).  Plaintiff testified that she is often forgetful, misplaces items and has to be reminded of events.  (R. 340, 354).  She has difficulty writing due to spasms in her hands and she cannot make a fist.  (R. 340-41).  Sometimes she can manipulate objects with her hands, but she has difficulty with her grip and experiences numbness.  (R. 352).  Plaintiff has difficulty with buttons, zippers and tying shoes.  (R. 352).

Plaintiff testified that she has urinary problems and takes a water pill every morning at 8:00 a.m.  (R. 353).  She uses the bathroom approximately every thirty minutes from 8:00 a.m. to 1:00 p.m.  (R. 353).  Her urge to use the restroom then tapers off.

Plaintiff testified that she does not believe she is capable of working an eight-hour day, even with a sit/stand option, due to her pain and fatigue.  (R. 352).

Vocational expert, Ronald Sholtis, testified at the remand ALJ hearing on March 23, 2006.  (R. 354-63).  According to the Dictionary of Occupational Titles, the VE testified that Plaintiff's past work as a cashier, meat wrapper and hand packager are classified as unskilled work at the light duty exertional level.  (R. 355).  The VE testified that Plaintiff has no transferable skills.  (R. 355).

The ALJ asked the VE to hypothetically consider an individual of the Plaintiff's same age, education and vocational background who can occasionally lift twenty pounds, frequently lift ten pounds, stand, walk and sit for about six hours in an eight hour workday, is limited in pushing and pulling with the upper extremities and limited in reaching overhead.  (R. 355-56). The VE testified that such an individual would be able to perform Plaintiff's past relevant work as well as work in the regional or national economy.  (R. 356).  The VE testified that if the individual were required to take unscheduled breaks three to four times per day for ten minutes at a time, such an individual would not be able to perform Plaintiff's past relevant work or any other work in the regional or national economy.  (R. 359-60).

The ALJ then asked the VE to hypothetically consider that same individual with the added limitations of the ability to frequently lift one to five pounds, occasionally lift six or ten pounds, and rarely lift in excess of eleven to twenty pounds; to occasionally reach with the right and left hands and arms; and to occasionally handle and finger with both hands.  (R. 357).  The VE testified that such an individual would not be able to perform Plaintiff's past relevant work,

but would be able to perform other work in the Northeast Pennsylvania region. (R. 357, 360-61). The VE identified the jobs of a restaurant hostess, with 1,600 jobs available in the regional economy; an information clerk, with a little over 1,000 jobs available in the regional economy; and a video surveillance monitor, with 900 jobs available in the regional economy. (R. 357-58). The VE again testified that if the individual were required to take unscheduled breaks three to four times per day for ten minutes at a time, such an individual would not be able to perform Plaintiff's past relevant work or any other work in the regional or national economy. (R. 359-60).

The ALJ then asked the VE to hypothetically consider the same individual with the ability to sit for not longer than fifteen minutes, stand for not longer than twenty minutes, lift not more than five pounds, is unable to work an eight hour day due to fatigue and pain, and has difficulty using the hands to grip, feel and manipulate objects. The VE testified that such an individual would not be able to perform any work of the competitive nature. (R. 358).

### B. Medical Background

On May 13, 2003, Plaintiff underwent x-rays of the cervical spine. (R. 207). The x-rays revealed narrowing of the intervertebral disc space height and spondylitic changes at C6-7 and straightening of the normal cervical lordosis. (R. 207). Right shoulder x-rays were negative and revealed no fractures, dislocation or other significant bony abnormality. (R. 207).

On May 24, 2002, Plaintiff underwent an MRI of the cervical spine. (R. 168). The MRI revealed a broad-base disc bulging at the C5-6 level causing partial effacement of the ventral thecal sac without spinal stenosis, and disc bulging at C6-7 and a very small left paracentral disc

herniation causing partial effacement of the ventral thecal sac without spinal stenosis.  (R. 168).

Plaintiff was diagnosed with diabetes in 1996.  (R. 268).  In July 2002, Plaintiff treated with Glen S. Kay, M.D.  (R. 216).  Dr. Kay noted that Plaintiff had good control of her diabetes with Glucotrol.  (R. 216).

On July 2, 2002, Plaintiff treated with orthopedist Mitchell S. Garden, M.D.  (R. 170-71). Upon examination, Plaintiff had very limited range of motion in the neck area secondary to subjective pain, she had negative relief sign bilaterally with elevation of her shoulders above 90 degrees, some altered sensation in the upper extremity, mainly in the right side at the tip of the long finger.  (R. 170).  She had good motion in bilateral upper extremities, except for right wrist dorsiflexors, symmetrical deep tendon reflexes in the bilateral biceps and brachial radialis.  (R. 170-71).  Dr. Garden reviewed the MRI of Plaintiff's cervical spine and noted that it revealed no evidence of any right sided cervical herniated nucleus pulposus, foraminal stenosis or spinal stenosis.  He noted that the MRI revealed a small paracentral disc herniation at C6-7.  Dr. Garden also reviewed Plaintiff's May 10, 2002 cervical spine x-rays.  He noted that they showed some narrowing of the disc interval of C6-7 and spondylolitic changes and straightening of the normal cervical lordotic curvature.  (R. 171).  Dr. Garden ultimately concluded that Plaintiff did not require any surgical intervention.  He recommended that Plaintiff treat with a physiatrist and undergo an EMG and nerve conduction studies of the upper extremities.  (R. 171).

On July 30, 2002, Plaintiff was evaluated by plastic and reconstructive surgeon Christine E. Jelalian, M.D.  (R. 164).  Dr. Jelalian referred Plaintiff to Dr. Young for an evaluation of her bilateral hand pain.  (R. 164).  She noted that the physical examination is equivocal for carpal

tunnel syndrome being the cause of Plaintiff's pain.  (R. 164).

On November 5, 2002, Raja Jagtiani, M.D., performed a consultative examination on Plaintiff.  (R. 224-29).  Plaintiff complained of pain in her neck and shoulder, diabetes and phlebitis.  (R. 224-25).  Dr. Jagtiani noted that Plaintiff is able to cook, shower, clean with the help of her husband, take short trips, socialize with friends, watch television and listen to the radio.  (R. 226).  Dr. Jagtiani noted that Plaintiff appeared to be in no acute distress, had normal gait, could heel and toe walk without difficulty, could perform a full squat, had a normal stance, uses no assistive device, did not require assistance changing for the examination or getting on and off the examination table and was able to rise from a chair without difficulty.  (R. 226).

Dr. Jagtiani stated that Plaintiff had reduced range of motion of the cervical spine, an extension of 10 degrees, a flexion of 25 degrees and lateral flexion of 20 degrees bilaterally.  (R. 227).  Plaintiff had no paracervical spasm, no bony point tenderness, rotation was 20 degrees bilaterally and she had full range of motion of the shoulders, elbows, wrists and hands.  She had no abnormalities in the thoracic spine, full flexion, extension and lateral flexion of the lumbar spine and full rotary movement bilaterally.  (R. 227).  A straight leg raising test was negative bilaterally.  Plaintiff had full range of motion of the hips, knees and ankles bilaterally.  Plaintiff had full strength in both the upper and lower extremities.  There was no evidence of subluxations, contractures, ankylosis or thickening.  Plaintiff's joints were stable and nontender, there was no redness, heat, swelling or effusion and no trigger points were evident.  (R. 227).

Neurologic examination revealed that deep tendon reflexes were physiologic and equal in Plaintiff's upper and lower extremities and no motor or sensory deficits were noted.  (R. 228).

Dr. Jagtiani noted that Plaintiff's hand and finger dexterity was intact and she had full grip bilaterally.  (R. 228).  Plaintiff's shoulder x-ray was within normal limits.  (R. 228).

Dr. Jagtiani ultimately diagnosed status post neck injury with neck pain, diabetes and history of superficial phlebitis.  (R. 228).  He stated that Plaintiff had a mild restriction for prolonged standing, walking, lifting and carrying.  (R. 228).

A Disability Determination Service (DDS) physician completed a Residual Functional Capacity Assessment on November 26, 2002.  (R. 231-36).  The DDS physician's primary diagnosis was degenerative disc disease of the cervical spine and the secondary diagnosis was diabetes.  (R. 231).  The doctor found that Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/ or carry ten pounds; stand and/ or walk and sit (with normal breaks) for a total of about six hours in an eight-hour workday; was limited with pushing and pulling in the upper extremities; and was limited in reaching in all directions, including reaching overhead.  (R. 232-33).  The doctor found no postural limitations, no visual limitations, no communicative limitations and no environmental limitations.  (R. 232-34).  The doctor found the Plaintiff was not credible, noting that in a November 5, 2002 examination with Dr. Jagtiani, Plaintiff had normal gait, cervical flexion was to 25 degrees, full range of motion in the upper and lower extremities with full strength and full lumbar flexion.  (R. 234-35).  The doctor completed the RFC Assessment with a statement from a treating or examining source regarding Plaintiff's physical capacities, and he noted that his conclusions were significantly different from the treating/ examining source's conclusions.  (R. 235).

12

In January 2003, Plaintiff was diagnosed with fibromylagia by David Hunt, D.O.  (R. 272).

Plaintiff underwent an EMG and nerve conduction studies on March 17, 2003.  (R. 275-76).  The tests revealed moderate right and left carpal tunnel syndrome and no evidence of bilateral cervical radiculopathies or polyneuropathy in the upper extremities.  (R. 276).

Plaintiff underwent an orthopedic consultation on August 19, 2004, performed by Robert E. Zickel, M.D.  (R. 294-95).  Dr. Zickel diagnosed cervical sprain and radiculitis and mild left carpal tunnel syndrome and moderate right carpal tunnel syndrome.  (R. 295).  Dr. Zickel opined that Plaintiff has a moderate, partial disability and he recommended continued treatment with chiropractor Dr. Larosa.  (R. 295).

On December 14, 2004, Plaintiff underwent an Independent Evaluation performed by Gregory J. Menio, M.D.  (R. 296-99).  Dr. Menio noted that Plaintiff has bilateral carpal tunnel syndrome and diabetes.  (R. 297).  Dr. Menio recommended surgery to treat the carpal tunnel syndrome.  He also stated that he does not believe Plaintiff's hand symptoms are related to a neck injury as her EMG and nerve conduction studies revealed no cervical radiculopathy.  (R. 297).

Plaintiff first treated with Franklin Guneratne, M.D., on January 29, 2004.  (R. 300).  On January 17, 2006, Dr. Guneratne completed a Medical Source Statement regarding what Plaintiff can still do despite her impairments.  (R. 298-99).  Dr. Guneratne diagnosed bilateral carpal tunnel syndrome, cervical radiculopathy, chronic neck pain and chronic left shoulder pain.  (R. 299).  He opined that Plaintiff could frequently lift one to five pounds, occasionally lift

six to ten pounds and "rarely/ none" lift eleven to fifty pounds.  Dr. Guneratne found that

Plaintiff could occasionally reach, handle and finger with her right and left hands and arms.  (R.

298-99).  He stated that Plaintiff's condition has existed at least since January 29, 2004.  (R.

299).

On January 23, 2006, Dr. Guneratne completed a Physical RFC Questionnaire.  (R. 300-

04).  He diagnosed chronic neck pain, cervical radiculopathy, chronic left shoulder pain, Type II

diabetes mellitus (uncontrolled), insomnia, gastroesophageal reflux disease (GERD), bilateral

carpal tunnel syndrome, peripheral neuropathy and cyclic edema.  (R. 300).  Dr. Guneratne

opined that Plaintiff's pain and symptoms frequently interfere with her attention and

concentration and that Plaintiff is moderately limited in her ability to deal with work stress.  (R.

302).  Dr. Guneratne found that Plaintiff can walk two city blocks without rest, can continuously

sit for thirty minutes at a time and can continuously stand for fifteen minutes at a time.  During

an eight hour workday, Dr. Guneratne found that Plaintiff can stand/ walk for about two hours

and sit for about four hours.  (R. 302).  During an eight hour workday, he found that Plaintiff

must walk every thirty minutes for three minutes.  Plaintiff would require a sit/ stand option.

She would have to take three to four unscheduled breaks for ten minutes at a time.  Dr.

Guneratne found that Plaintiff must elevate her legs to thirty degrees if she sat for a prolonged

period of time.  If Plaintiff had a sedentary job, Dr. Guneratne opined that during an eight hour

workday, Plaintiff would be required to elevate her legs 60% of the time.  (R. 303).  He noted

that Plaintiff does not require an assistive standing or walking device.  In a competitive work

environment, Plaintiff would be able to occasionally lift less than ten pounds and never lift ten

to fifty pounds. (R. 303). Dr. Guneratne found that Plaintiff has significant limitations in doing repetitive reaching, handling and fingering and she would only be able to use her hands, fingers and arms 40% of the time at work. (R. 303-04). He also found that Plaintiff would be able to bend and twist at the waist 80% of the time at work. (R. 304). Plaintiff's impairments cause both good days and bad days. (R. 304). Dr. Guneratne opined that Plaintiff would miss more than three days of work per month due to her impairments. (R. 304).

On January 26, 2006, Steven S. Reggie, D.C., completed a Physical RFC Questionnaire. (R. 306-10). Dr. Reggie diagnosed cervical disc syndrome. He noted that her condition was stable with treatment. (R. 306). Dr. Reggie opined that Plaintiff's pain and symptoms frequently interfere with her attention and concentration and that Plaintiff had a marked limitation in her ability to deal with work stress. (R. 308). Dr. Reggie found that Plaintiff can walk zero to one city block without rest, can continuously sit for fifteen minutes at a time and can continuously stand for fifteen minutes at a time. During an eight hour workday, Dr. Reggie found that Plaintiff can sit, stand and walk for about two hours. (R. 308). During an eight hour workday, he found that Plaintiff must walk every ten to fifteen minutes for ten minutes. Plaintiff would require a sit/ stand option. She would have to take frequent unscheduled breaks for several minutes to hours. Dr. Reggie found that Plaintiff is not required to elevate her legs with prolonged sitting. He noted that Plaintiff does not require an assistive standing or walking device. In a competitive work environment, Plaintiff would be able to occasionally lift less than ten pounds and never lift ten to fifty pounds. (R. 308). Dr. Reggie found that Plaintiff has significant limitations in doing repetitive reaching, handling and fingering and she would only be

15

able to use her hands, fingers and arms 10% of the time at work. (R. 308-09). He also found that Plaintiff would be able to bend 10% of the time and twist 50% of the time at work. (R. 309). Plaintiff's impairments cause both good days and bad days. (R. 309). Dr. Reggie opined that Plaintiff would miss more than three days of work per month due to her impairments. (R. 309). Dr. Reggie lastly opined that Plaintiff is unable to work a regular job on a sustained basis. (R. 309).

**V.  DISCUSSION.**

The Plaintiff contends that the ALJ erred in the following ways: (1) by finding that Plaintiff is capable of performing light work; and (2) by failing to find that Plaintiff met Medical-Vocational Listing 201.14. (Doc. 7 at 7).

### A.  Whether the ALJ erred in finding that Plaintiff is capable of performing work at the light duty level.

The ALJ found that Plaintiff has the residual functional capacity to frequently lift one to five pounds; occasionally lift six to ten pounds; rarely lift eleven to twenty pounds; sit, stand and walk for six hours in an eight hour day; is limited with pushing and pulling in the upper extremities with occasional overhead reaching; and can occasionally use both hands for reaching, handling, and fingering. (R. 20).

Residual functional capacity is defined as follows:

> (a) *General.*  Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is what you can still do despite your limitations.

20 C.F.R. § 404.1545(a).

The Court must review the ALJ's decision regarding the Plaintiff's residual functional capacity with the deference required of the substantial evidence standard of review.  *See Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002).  As the *Burns* Court stated, "the ALJ nonetheless must have evaluated all relevant evidence, *Fargnoli v. Massanari*, 247 F.3d 34, 40-41 (3d Cir. 2001), and explained his reasons for rejecting any such evidence.  *Burnett v. Commissioner of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000).  He also must have given [] [Plaintiff's] subjective complaints 'serious consideration,' *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993), and made specific findings of fact, including credibility, as to [] [Plaintiff's] residual functional capacity.  *Burnett*, 220 F.3d at 120; *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)." *Id.*

In making his determination, the ALJ credited the opinion of Dr. Guneratne, in part, and did not credit the opinion of Plaintiff's chiropractor, Dr. Reggie.  Plaintiff argues that the ALJ erred by not crediting Dr. Guneratne's opinion in its entirety and by failing to give Dr. Reggie's opinion controlling weight.  (Doc. 7 at 8).

The Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310  (3d Cir. 2000).  The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer* [v. *Apfel*, 186 F.3d 422, 429 (3d Cir.1999)]  (*quoting  Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also  Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones,* 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir.1988);

> *Brewster*, 786 F.2d at 585.  Where, as here, the opinion of a treating
> physician conflicts with that of a non-treating, non-examining physician, the
> ALJ may choose whom to credit but "cannot reject evidence for no reason
> or for the wrong reason."  *Plummer*, 186 F.3d at 429 (*citing  Mason v.
> Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the
> medical findings that support a treating physician's opinion that the
> claimant is disabled.  *See  Adorno*, 40 F.3d at 48.  In choosing to reject the
> treating physician's assessment, an ALJ may not make "speculative
> inferences from medical reports" and may reject "a treating physician's
> opinion outright only on the basis of contradictory medical evidence" and
> not due to his or her own credibility judgments, speculation or lay opinion.
> *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d
> Cir.1988); *Kent*, 710 F.2d at 115.

*Id*. at 317-318.  Similarly, the Social Security Regulations state that when the opinion of a

treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in your case record," it is

to be given controlling weight.  20 C.F.R. § 416.927(d)(2).  When the opinion of a treating

physician is not given controlling weight, the length of the treatment relationship and the

frequency of examination must be considered.  The Regulations state: "Generally, the longer a

treating source has treated you and the more times you have been seen by a treating source, the

more weight we will give to the source's medical opinion.  When the treating source has seen

you a number of times and long enough to have obtained a longitudinal picture of your

impairment, we will give the source's opinion more weight than we would give it  if it were

from a nontreating source."  20 C.F.R. § 416.927(d)(2)(I).  Additionally, the nature and extent of

the treatment relationship is considered.  20 C.F.R. § 416.927(d)(2)(ii).

   While treating physicians' opinions may be given more weight, there must be relevant

evidence to support the opinion.  20 C.F.R. § 404.1527(d).  Automatic adoption of the opinion

of the treating physician is not required.  *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

Defendant argues that the ALJ correctly determined that Dr. Reggie's opinion is not entitled to controlling weight because the opinion of a chiropractor is not an acceptable medical source.  (R. 23) (Doc. 8 at 14).  Acceptable medical sources include only licensed physicians, licensed or certified psychologists (including school psychologists), licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  *See* 20 C.F.R. §§ 404.1513, 416.913.  Thus, chiropractors are not acceptable medical sources and Dr. Reggie's opinion was not entitled to controlling weight.  *Id*.

On Dr. Guneratne's January 17, 2006 Medical Source Statement, he opined that Plaintiff could frequently lift one to five pounds, occasionally lift six to ten pounds and "rarely/ none" lift eleven to fifty pounds.  Dr. Guneratne found that Plaintiff could occasionally reach, handle and finger with her right and left hands and arms.  (R. 298-99).  On the DDS physician's November 26, 2002 RFC Assessment, the doctor found that Plaintiff could occasionally lift and/ or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/ or walk and sit (with normal breaks) for a total of about six hours in an eight-hour workday; was limited with pushing and pulling in the upper extremities; and was limited in reaching in all directions, including reaching overhead.  (R. 231-36).  Thus, the ALJ adopted these assessments, noting their consistency.  (R. 23).

Plaintiff argues that the ALJ misstated Dr. Guneratne's opinion.  (Doc. 7 at 8).  Plaintiff avers that Dr. Guneratne found she could "never" lift more than ten pounds.  (Doc. 7 at 8).  Defendant counters that Dr. Guneratne did not find that Plaintiff could "never" lift more than

ten pounds, rather Dr. Guneratne checked the space that Plaintiff could "rarely/ none" lift eleven to twenty pounds. (Doc. 8 at 12).  Dr. Guneratne's Medical Source Statement form defines "rarely/ none" as unable to do an activity on a sustained basis during an eight hour workday. (R. 298).  The ALJ states that the DDS physician and Dr. Guneratne found that Plaintiff could rarely or never li

ft eleven to twenty pounds.  (R. 23).  Thus, the ALJ did not misstate Dr. Guneratne's opinion.

      Plaintiff also argues that the ALJ erred in not giving controlling weight to the remainder of Dr. Guneratne's opinion. (Doc. 7 at 9-10).  Plaintiff asserts that Dr. Guneratne's opinion is consistent with Dr. Reggie's opinion and the medical evidence of record.  (Doc. 7 at 10).  She argues that the only medical evidence that is inconsistent with the opinions of Dr. Guneratne and Dr. Reggie is the opinion of the DDS physician.  (Doc. 7 at 10).

      As previously stated, Dr. Guneratne found that Plaintiff can walk two city blocks without rest, can continuously sit for thirty minutes at a time and continuously stand for fifteen minutes at a time. (R. 302).  During an eight hour workday, Dr. Guneratne found that Plaintiff can stand/ walk for about two hours and sit for about four hours and must walk every thirty minutes for three minutes.  Plaintiff would require a sit/stand option and would have to take three to four unscheduled breaks for ten minutes at a time.  (R. 302).  Dr. Guneratne found that Plaintiff would be required to elevate her legs if she sat for a prolonged period of time.  (R. 303). Plaintiff would be able to occasionally lift less than ten pounds and never lift ten to fifty pounds. (R. 303).  Dr. Guneratne found that Plaintiff has significant limitations in doing repetitive reaching, handling and fingering.  (R. 303-04).  Dr. Guneratne opined that Plaintiff would miss

more than three days of work per month due to her impairments.  (R. 304).

At Dr. Jagtiani's November 5, 2002 examination of Plaintiff, he noted that Plaintiff is able to cook, shower, clean (with help), take short trips, socialize with friends, watch television and listen to the radio.  (R. 224-29).  Plaintiff appeared to be in no acute distress, had normal gait, could heel and toe walk without difficulty, could perform a full squat, had a normal stance, uses no assistive device, did not require assistance changing for the examination or getting on and off the examination table and was able to rise from a chair without difficulty.  (R. 226).  Plaintiff had reduced range of motion of the cervical spine, but otherwise had no abnormalities.  (R. 227).  A straight leg raising test was negative bilaterally and she had full strength in both the upper and lower extremities.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but not to the intensity, duration and limiting effects as alleged by Plaintiff.  (R. 24).  The ALJ found that Plaintiff's description of her symptoms are not entirely credible.  (R. 24).  The ALJ noted that Plaintiff is able to cook, clean, do laundry, iron, watch television, read, paint, talk on the phone, and use e-mail.  (R. 24).  The ALJ concluded that these activities of daily living suggest that Plaintiff has no significant distraction due to pain and she is able to use her hands for different functions.  (R. 24).  The ALJ further noted Plaintiff reported that her pain medications were effective.  (R. 24).  The ALJ also stated that although Plaintiff's water pills cause her to urinate frequently, she can take the pills after work so they do not hinder her ability to work.  (R. 24).

The ALJ thoroughly examined all of the evidence presented to him.  He reviewed the medical records and the treating and examining physicians' notes.  20 C.F.R. §§ 404.1529, 416.920; Social Security Ruling 96-7p.  (R. 20-23).  He also considered Plaintiff's testimony regarding her pain and daily activities and capabilities.

Thus, the ALJ's decision is supported by substantial evidence and the ALJ properly considered the opinions of Drs. Guneratne and Reggie.

**B.  Whether the ALJ erred in finding that Plaintiff did not meet Medical-Vocational Listing 201.14.**

The ALJ determined that there are significant jobs in the national economy which the Plaintiff could perform.  (R. 20-25).

In determining whether a claimant can perform other work, the ALJ may rely upon the Medical-Vocational Guidelines ("Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, Grids.  *See Jesurum v. Sec. of HHS*, 48 F.3d 114, 117 (3d Cir. 1995).  The Grids require the ALJ to consider the claimant's age, educational level, previous work experience, and RFC.  If a claimant has substantial nonexertional limitations, then the Grids can only be used as a framework, and a vocational expert is needed.  *See Knight v. Barnhart*, 195 F. Supp. 2d 569, 579 (D. Del. 2002).  When the restrictions affect the claimant's ability to meet job demands other than strength demands, the limitations are nonexertional.  Examples of such nonexertional limitations are difficulty functioning because of nervousness, anxiety, depression, difficulty seeing, hearing, maintaining concentration and remembering.  20 C.F.R. § 404.1569a(c).  In this case, Plaintiff alleges both exertional and nonexertional limitations.

22

The Plaintiff avers that Grid Rule 201.14 directed that the ALJ find her disabled. However, Plaintiff's condition does not match § 201.14 in the Grids. The ALJ considered Plaintiff's age, education, work background, and RFC and found that Plaintiff could perform other work. (R. 20-25). He considered the Grids and found that the rules at the light and sedentary levels directed different conclusions. Section 201.14 of the Grids applies to an individual closely approaching advanced age, who is a high school graduate or more, and has previous skilled or unskilled work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1. Thus, § 201.14 does not apply to direct a finding of disabled. Plaintiff was a person closely approaching advanced age. The ALJ determined that Plaintiff has a limited education, has prior work experience of unskilled work, no transferable skills and the RFC to perform a limited range of light work. (R. 20, 24).

As stated, the ALJ found that the Plaintiff could perform light work. (R. 20). If a claimant, even if she is a person approaching advanced age (between the ages of 50 and 54) [as Plaintiff was at the time of the ALJ's decision (53 years old)], was not restricted to performing sedentary work, then a finding of not disabled would be directed by the Grids.

Grid Rule 201.00(g) provides:

> (g) Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability <u>if they are restricted to sedentary work</u>. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains.

20 C.F.R., Pt. 404, Subpt. P, App. 2 § 201.00(g) (emphasis added).

23

Plaintiff's reliance on the Grid Rule is misplaced, as she was clearly found by the ALJ to have the RFC to perform light work.  Plaintiff was not maximally limited to sedentary work by the ALJ.  Grid Rule 201.00(g) applies to persons between the ages of 50 and 54 who are restricted to sedentary work.  This does not apply to Plaintiff, who was not so restricted.

Thus, the ALJ elicited testimony from a vocational expert.  The vocational expert testified that Plaintiff could perform other work in the economy.  The Court in *Burnett*, 220 F. 3d at 126, stated that "[a] step five analysis can be quite fact specific, involving more than simply applying the Grids, including, perhaps, testimony of a vocational expert."  (Citations omitted).  In the present case, the ALJ did not rely solely upon the Grids.  A vocational expert also testified at the hearing.  The vocational expert testified that there were jobs available which a hypothetical person with Plaintiff's background and RFC could perform.  (R. 354-63).

The ALJ conducted an individualized determination, which included the functional limitations of Plaintiff, and found that Plaintiff could perform a limited range of light work that existed in substantial numbers in the regional economy.  (R. 20).  Thus, we fail to see how the applicability of the cited Grid Rule requires a finding of "disabled" in this case.   There was substantial evidence to support the ALJ's finding that the Plaintiff had the RFC to perform a limited range of light duty work.  (R. 20).  *See* 20 C.F.R. § 404.1567(b).  Therefore, we find that the Grids did not require a finding of disability in this case.  The ALJ also properly relied upon the testimony of a vocational expert in determining that Plaintiff was not disabled under the Act. *See Burnett,* 220 F.3d at 126.

24

## V.  RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that Plaintiff's appeal be denied.

<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: November 13, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DENISE WILLIAMS,               :       CIVIL ACTION NO. **3:CV-06-1871**
                               :
   Plaintiff,                  :       (Judge Caputo)
                               :
   v.                          :       (Magistrate Judge Blewitt)
                               :
MICHAEL J. ASTRUE,             :
Commissioner of                :
Social Security,               :
                               :
   Defendant                   :

## <u>NOTICE</u>

_____NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing

Report and Recommendation dated November 13, 2007.

   Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a de novo determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: November 13, 2007**

27